10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Philadelphia, PA</u>

---

*RELATED CASE IF ANY:* Case Number:<u>2:23-cv-01421</u>    Judge: <u>Mia Roberts Perez</u>

1.  Does this case involve property included in an earlier numbered suit?    Yes [ ]

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes [X]

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes [ ]

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes [ ]

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?    Yes [ ]
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case [X] is / [ ] **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Wage and Hour Class Action/Collective Action
- [ ] 6. Patent
- [ ] 7. Copyright/Trademark
- [ ] 8. Employment
- [ ] 9. Labor-Management Relations
- [ ] 10. Civil Rights
- [ ] 11. Habeas Corpus
- [ ] 12. Securities Cases
- [ ] 13. Social Security Review Cases
- [ ] 14. Qui Tam Cases
- [ ] 15. Cases Seeking Systemic Relief **\*see certification below\***
- [ ] 16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify)*:_____
- [ ] 7. Products Liability
- [X] 8. All Other Diversity Cases: *(Please specify)*_____
  <u>Personal Property</u>

I certify that, to the best of my knowledge and belief, that the remedy sought in this case [X] **does** / [ ] **does not** have implications beyond the parties before the court and [ ] **does** / [X] **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X]    Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ]    None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| CAROL L. CALLAHAN, Individually and on Behalf of All Others Similarly Situated,          v. | : : : | CIVIL ACTION |
| ENCORE SERIES INC. dba THE PHILLY POPS, et al. | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.         (X )

| | | |
|---|---|---|
| October 16, 2024 | _(signature)_ | Jonathan A. Zakheim, Esq. |
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| (215) 790-0100 | (215) 790-0509 | jzakheim@astorweiss.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL L. CALLAHAN, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>ENCORE SERIES INC. dba THE PHILLY POPS, THE PHILADELPHIA ORCHESTRA ASSOCIATION, THE KIMMEL CENTER, INC., TICKET PHILADELPHIA, FRANK GIORDANO, MATIAS TARNOPOLSKY<br><br>*Defendants.* | CASE NO. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Carol L. Callahan ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Frank Giordano, Matias Tarnopolsky, Encore Series Inc. d/b/a The Philly POPS, The Philadelphia Orchestra Association, Kimmel Center, Inc., and Ticket Philadelphia (collectively, "Defendants"). In support thereof, Plaintiff states and alleges as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action arising out of the effective cancellation of multiple concerts due to a poorly planned conspiracy to force the Philly POPS out of business for the benefit of the Philadelphia Orchestra.  Plaintiff brings this action against Defendants to recoup the unrefunded amounts paid for her tickets and those of thousands of putative Class members across the country, and therefore asserts common law claims against Defendants for breach of contract, fraud, aiding and abetting, conversion, conspiracy, and concert of action, as well as for violations

1

of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1, *et seq.*, and other similar statutes nationwide.

## PARTIES

### *Plaintiff*

2.      Plaintiff Carol L. Callahan is an individual resident of Montgomery County in the Commonwealth of Pennsylvania, and a purchaser of tickets to concerts scheduled to be performed by the Philly POPS at the Kimmel Center that have been indefinitely "postponed" without refund due to the unlawful conduct described herein.

### *The POPS Defendants*

3.      Defendant Encore Series Inc. d/b/a The Philly POPS (the "POPS") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with offices at 1518 Walnut Street, Philadelphia, Pennsylvania 19102.

4.      Upon information and belief, the POPS' primary business activity since its founding in 1979 involved the production and management of live orchestral performances of so-called 'popular' or 'pops' music.

5.      Upon information and belief, beginning in 2001, the POPS produced an annual concert series at Verizon Hall at the Kimmel Center for the Performing Arts ("Verizon Hall") in Philadelphia, Pennsylvania, pursuant to lease agreements with Defendant Kimmel Center, Inc., the last of which was set to expire in June 2023.

6.      At all relevant times, employees of the POPS acted as agents and servants for the POPS, and within the scope of their authority and in the course of employment under the direct control of the POPS.  Additionally, at all relevant times, the POPS acted by and through their

authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with the POPS and in furtherance of the POPS' business.

7.      Defendant Frank Giordano is an adult individual residing at 170 East Main Street, Moorestown, New Jersey 08057.  Defendant Giordano was the President and Chief Executive Officer of the POPS from 2011 until 2023, and continues to serve on the Board of Directors.

8.      Defendants Giordano and the POPS are referred to collectively herein as the "POPS Defendants."

### *The Kimmel Defendants*

9.      Defendant Philadelphia Orchestra Association ("POA" or the "Orchestra") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with offices at 300 South Broad Street, Philadelphia, Pennsylvania 19102.

10.     Upon information and belief, the primary business activity of the Orchestra since its founding in 1900 has been the production and management of live performances of classical music, including an annual concert series performed at Verizon Hall since 2001.

11.     Defendant Kimmel Center, Inc. ("KCI") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with offices at 300 South Broad Street, Philadelphia, Pennsylvania 19102.

12.     Upon information and belief, the primary business activity of Defendant KCI is the management and operation of Verizon Hall.

13.     Defendant Ticket Philadelphia ("Ticket Philadelphia") is a general partnership organized under the laws of the Commonwealth of Pennsylvania with offices at 1420 Locust Street, Philadelphia, Pennsylvania 19102.

3

14.     Upon information and belief, Ticket Philadelphia was formed by the Orchestra and KCI in 2013 to manage the Kimmel Center's box office, telephone call centers, and a third-party ticketing management platform called Tessitura.

15.     The Philadelphia Orchestra and Kimmel Center, Inc. ("POKC") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with offices at One South Broad Street, 14th Floor, Philadelphia, Pennsylvania 19107.

16.     Upon information and belief, POKC was formed by way of a partnership and affiliation agreement between the Orchestra and KCI executed on December 3, 2021.

17.     Shortly thereafter, upon information and belief, POKC entered into a partnership agreement with Ticket Philadelphia to handle box office services for events held at Verizon Hall.

18.     Accordingly, Defendant Ticket Philadelphia has continued to manage ticketing for events at Verizon Hall as a separate legal entity distinct from POKC, KCI, and the Orchestra, pursuant to contractual agreements with various organizations, including, at times relevant to this lawsuit, the POPS.

19.     Likewise, Defendant KCI has continued to act as the landlord for Verizon Hall pursuant to contractual agreements with the POPS and other organizations.

20.     Defendant Matias Tarnopolsky is an adult individual residing at 1155 Youngsford Road, Gladwyne, Pennsylvania 19035.  Upon information and belief, Defendant Tarnopolsky has served as the President and Chief Executive Officer of the Orchestra since 2018 and of POKC since 2021.

21.     Defendants Tarnopolsky, the Orchestra, KCI, and Ticket Philadelphia are referred to collectively herein as the "Kimmel Defendants."

4

22.     Additionally, the POPS Defendants and the Kimmel Defendants are referred to collectively herein as the "Defendants."

## JURISDICTION AND VENUE

23.     This Court has subject jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the proposed class contains more than 100 members, at least one of whom is a citizen of a different state than one of the Defendants, and seeks in the aggregate more than $5 million, exclusive of interest and costs.

24.     The Court has personal jurisdiction over Defendants because at all relevant times Defendants have conducted business and derived substantial revenue in Pennsylvania, and because a substantial portion of the acts complained of took place in Pennsylvania.

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and regularly conduct business in the Eastern District of Pennsylvania and specifically in the City of Philadelphia, because Plaintiff resides in this district and the transaction at issue occurred in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## INDIVIDUAL PLAINTIFF'S ALLEGATIONS

26.     In or around February 2022, the POPS announced its 2022-23 concert season, which included approximately twenty-one total performances of seven shows at Verizon Hall from September 2022 through May 2023.[1]

---

[1] Chloe Rabinowitz, *The Philly POPS Announces New Performances for 2022–2023 Season*, Broadway World, Feb. 14, 2022, available at https://www.broadwayworld.com/philadelphia/article/The-Philly-POPS-Announces-New-Performances-for-20222023-Season-20220214#:~:text=The%20Philly%20POPS%20Announces%20New%20Performances%20for%202022%2E2%80%932023,Bohemian%20Rhapsody%2C%20Rock%20of%20Ages%20%26%20Tommy%20 (last accessed Sept. 27, 2024).

27.     On November 16, 2022, Plaintiff, a longtime fan of the POPS, received a mass email (the "November 2022 Email") announcing that the group would cease operations after "continu[ing] to carry out slated programming for the 2022–23 season."[2]

28.     The November 2022 Email, which was sent by Defendant Giordano and purportedly signed by himself and board chairman Joseph Del Raso, implied that the directors of the POPS had approved the shutdown, referencing a resolution that permitted "negotiations … to explore strategic alternatives," and then continuing on to state that, "[a]fter much careful consideration, we made the difficult decision to cease operations following the conclusion of the 2022-23 season."[3]

29.     The November 2022 Email further asserted that "[w]hile winding down the organization was a decision we sincerely hoped to avoid, we are grateful to POKC for their guidance and counsel in helping to preserve pops programming in Philadelphia."[4]

30.     On January 3, 2023, Plaintiff purchased a total of four (4) tickets from Ticket Philadelphia for POPS' concerts scheduled to be performed at Verizon Hall on February 18, 2023 and May 20, 2023, true and correct copies of which are reproduced below:

---

[2] A true and correct copy of the November 16, 2022 Email is attached hereto as Ex. "1".
[3] *See* Ex. 1.
[4] *See* Id.



31.     Plaintiff paid Defendants approximately $272.80 for the tickets.

32.     Around two weeks later, on or around January 20, 2023, the Kimmel Defendants announced that the POPS had been evicted from Verizon Hall over an alleged $1 million debt, stating on the Kimmel Center website that "the Philly Pops must suspend all performances on the Kimmel Cultural Campus while the Pops takes time to restructure its business model and raise the funding needed to pay debts and secure a financial future."[5]

33.     By email dated January 23, 2023, the POPS informed Plaintiff and other ticketholders that it was "actively exploring other, alternative venues to the Kimmel Center and will make announcements on the rescheduling of the spring programs shortly," and requested "patience for two weeks while we plan to administrate the processes and obtain the files which had previously been managed by Ticket Philadelphia, the ticketing organization owned by the POKC, so that we can effectively manage your account."[6]

---

[5] Peter Dobrin, *Kimmel Center Evicts Philly Pops Over Past Debt*, The Philadelphia Inquirer, Jan. 20, 2023, available at https://www.inquirer.com/news/kimmel-kicks-out-philly-pops-20230120.html (last accessed May 21, 2024).
[6] A true and correct copy of the POPS' January 23, 2023 Email is attached hereto as Ex. "2."

34.     On February 16, 2023, the POPS advised Plaintiff by email that their February 18, 2023 concert was postponed, and further explained that "we expect to announce new dates for this performance shortly."[7]

35.     By email dated April 13, 2023, the POPS informed Plaintiff that it had filed a lawsuit against certain of the Kimmel Defendants, as well as POKC, for allegedly having "deliberately acted to prevent our performances at the Kimmel Center," because of which the POPS was "forced to postpone the balance of its 2022-2023 performance season[.]"[8]

36.     On May 16, 2023, the POPS advised Plaintiff by email that the May 20, 2023 concert was postponed, and further stated that "[t]he POPS team continues to work diligently behind the scenes, and we remain hopeful that our ongoing discussions with the Kimmel Center will result in the rescheduling of **all** postponed performances shortly."[9]

37.     Plaintiff contacted Defendants repeatedly through 2023 to attempt to obtain a refund for her tickets, and was informed no refund could be offered at the time of her requests.

38.     Subsequently, by email dated February 15, 2024, Plaintiff attempted to obtain a refund from the POPS but received no response.[10]

39.     The POPS' February 18 and May 20, 2023 concerts have been indefinitely "postponed" while Plaintiff's money has not been returned, causing Plaintiff injury.

40.     The effective cancellation of the POPS' February 18 and May 20, 2023 concerts and failure to return Plaintiff's money is without excuse or justification, but was rather the result of an unlawful scheme by the Kimmel Defendants and Defendant Giordano to force the POPS out of business for the benefit of the Orchestra.

---

[7] A true and correct copy of the POPS' February 16, 2023 Email is attached hereto as Ex. "3."
[8] A true and correct copy of the POPS' April 13, 2023 Email is attached hereto as Ex. "4."
[9] A true and correct copy of the POPS' May 16, 2023 Email is attached hereto as Ex. "5" (emphasis original).
[10] A true and correct copy of Plaintiff's February 15, 2024 email is attached hereto as Ex. "6."

## DEFENDANTS' SCHEME

### A. Background information concerning Defendants' relationship

41.     Upon information and belief, the Philadelphia Orchestra has long sought to improve its own finances by taking over the revenue generated by the POPS' business.

42.     For example, after many years operating independently, the Orchestra and the POPS executed a merger agreement in 2005.[11]

43.     Upon information and belief, the groups' 2005 merger agreement included an option for the Orchestra to dissolve and absorb the POPS after five years, which Orchestra leadership intended to exercise in order to "guarantee [Orchestra] musicians a 52-week salary" by "deploying them in the pops repertoire," despite knowing that such a plan would force "the freelance POPS musicians out of work."[12]

44.     However, the Orchestra failed to exercise this option as a result of its own financial issues, which culminated in a 2011 bankruptcy filing, and the POPS was restored to independence.[13]

45.     Upon information and belief, the 2021 creation of POKC rekindled the Kimmel Defendants' interest in absorbing the POPS, based on a belief that their newly "vertically integrated" ownership of both the Orchestra and Verizon Hall enabled the Kimmel Defendants to capture the Philly POPS' annual ticket revenue, which typically amounted to around $4 million, with minimal additional costs.[14]

---

[11]   *Cash-strapped Philly Orchestra, Philly Pops Split*, WHYY, Sept. 20, 2011, available at: https://whyy.org/articles/feed-9/ (last accessed Oct. 2, 2024).
[12]   David Murrell, *Who Killed the Philly POPS?*, Philadelphia Magazine, Mar. 23, 2024 (the "Philadelphia Magazine Article"), available at: https://www.phillymag.com/news/2024/03/23/philly-pops/ (last accessed Sept. 26, 2024), a true and correct copy of which is annexed hereto as Ex. "7", at p. 4.
[13]   *See* Ex. 7 at p. 4.
[14]   *See* Id. at p. 12.

46.     Thereafter, upon information and belief, the Kimmel Defendants began to engage in strong-arm tactics to force the POPS' closure, which reportedly included several attempts by the Orchestra to book guest musicians who had prior commitments to the POPS, as well as an incident in which Karen Corbin, a former longtime POPS executive, claimed that an unidentified employee of the Kimmel Defendants told her to "stop programming jazz shows with the POPS because 'the Kimmel owns jazz in Philly.'"[15]

**B.  August 2022: Defendants Giordano and Tarnopolsky agree to dissolve the POPS**

47.     Upon information and belief, Defendant Tarnopolsky and Defendant Giordano agreed to dissolve the POPS for the benefit of the Orchestra no later than August 2022, at a meeting that "practically no one at the POPS" knew about, and which Giordano reportedly attended "only under extreme duress" because the Kimmel Defendants "hadn't yet sent tickets to POPS patrons even though the season's first performance was just weeks away."[16]

48.     Indeed, Defendant Tarnopolsky confirmed the withholding of POPS concert tickets in an email to Defendant Giordano sent shortly after their meeting (the "August 2022 Email"), writing that, "KCI and [Ticket Philadelphia] will continue to withhold all services (ticketing and venue) until POPS is either paid-up or other agreeable terms regarding a transition are settled."[17]

49.     Defendant Tarnopolsky then continued in the August 2022 Email to assert that the POPS owed "around $500,000 total arrears" to the Kimmel Defendants, due to which the Kimmel Defendants could not "allow the current season to proceed."[18]

50.     Based on this alleged $500,000 debt, Defendant Tarnopolsky explicitly threatened the POPS' ability to perform the first concerts of the POPS' 2022-23 season, demanding that

---

[15] *See* Id. at p. 8.
[16] *See* Id. at p. 12.
[17] A true and correct copy of the August 2022 Email is attached hereto as Ex. "8".
[18] *See* Ex. 8.

10

"[u]nless we can arrive at terms quickly, this means cancelling the September 16, 2022 run of the Moody Blues in the absence of further payments."[19]

51.     According to the August 2022 Email, Defendant Giordano and Defendant Tarnopolsky proposed to address the POPS' alleged $500,000 debt by enacting "a plan whereby The Philadelphia Orchestra and Kimmel Center Inc. would take over the programming and production of this season, and future seasons, of Philly POPS programming."[20]

52.     Defendant Tarnopolsky offered Defendant Giordano a seat on the Kimmel Center's own board of directors as an inducement for "dissolv[ing] your board and organization[.]"[21]

53.     Defendant Tarnopolsky further elaborated that "the plan" going forward would be for POKC to "program and present pops concerts utilizing the infrastructure of the POKC by engaging the existing artistic, operational, and fundraising teams."[22]

54.     However, Defendant Tarnopolsky emphasized that the Kimmel Defendants were not willing to "assume any obligations of [the POPS]."[23]

55.     Finally, Defendant Tarnopolsky concluded by stating that the announcement of the POPS' closure would be made at "the POPS Ball currently scheduled for September 22, 2022, as [Defendant Giordano] suggested."[24]

56.     The POPS disputes the entire $500,000 debt alleged by Defendant Tarnopolsky in the August 2022 Email.

57.     For example, Ms. Corbin has been publicly quoted as stating, "I truly don't know where that [$500,000] figure came from" despite her role overseeing the group's finances, and two

---

[19] *See* Id.
[20] *See* Id.
[21] *See* Id.
[22] *See* Id.
[23] *See* Id.
[24] *See* Id.

additional "higher-ups at the POPS" reported their belief that "the POPS was even with POKC in September."[25]

58.    Likewise, the POPS has asserted in legal filings that it retired a debt to the Kimmel Defendants of over $500,000 on or around September 16, 2022, and paid the Kimmel Defendants over $1.5 million between March 2020 and October 2022.[26]

59.    Nonetheless, Defendant Giordano reportedly chose to rely on the Kimmel Defendants' debt calculations when deciding to shut down the POPS, rather than on the POPS' assessment.[27]

### C.    September – October 2022: The POPS Board of Directors authorizes merger negotiations with the Kimmel Defendants based on the September 2022 Memorandum

60.    While there was no shut down announced in September 2022, planning to dissolve the POPS continued, as demonstrated by a September 27, 2022 Memorandum (the "September 2022 Memorandum") prepared in connection with a meeting between Defendant Giordano, Mr. Del Raso, and two employees of the Kimmel Defendants.[28]

61.    According to the September 2022 Memorandum, the "[g]oal" of Defendants was to "[p]lan for orderly wind down of [POPS'] business without bankruptcy and seamless transition to POPS programming at [the Orchestra] next season" with "[n]o POKC/POA/KCI assumption of liability/obligations."[29]

62.    The September 2022 Memorandum identified specific actions required from Defendants to "facilitate an amicable and systematic transition," including "[c]ommunication with

---

[25] *See* Morell, *Who Killed the Philly POPS?*, Ex. 7 at p. 14.
[26] *See* POPS' Reply in Support of Preliminary Injunction at Dkt. 23, p. 3, *Encore Series Inc. d/b/a THE PHILLY POPS v. The Philadelphia Orchestra and Kimmel Center, Inc., et al.,* No. 2:23-cv-01421-MRP (E.D. Pa. June 30, 2023), a true and correct copy of which is attached hereto as Ex. "9".
[27] *See* Ex. 7 at p. 14.
[28] A true and correct copy of the September 2022 Memorandum is attached hereto as Ex. "10".
[29] *See* Ex. 10 at Goal.

POKC & POPS Board" to obtain "[s]olicitation for support (fiduciary responsibility)" and "[a]pproval of orderly wind-down plan with goal of dissolution presented to the POKC and approved by the ESI Board."[30]

63.     Additionally, the September 2022 Memorandum called for Defendants to "[r]eview calendar through the end of the [POPS'] current season to determine what programs remain and critical dates," and to give major benefactors advance notice of the shutdown announcement so as not to interfere with POPS' concerts scheduled into Spring 2023.[31]

64.     In other words, the September 2022 Memorandum contemplated that the POPS would finish out their 2022-23 concert season at Verizon Hall.

65.     The September 2022 Memorandum further contemplated, among other things, that the POPS would provide the Kimmel Defendants with "[p]atron database access as part of a potential monetary compromise."[32]

66.     In October 2022, the POPS board reportedly approved "negotiations … to explore strategic alternatives" with the Kimmel Defendants, which approval, upon information and belief, was predicated on adherence to and fulfillment of the requirements set out in the September 2022 Memorandum.[33]

67.     Upon information and belief, the Kimmel Defendants and Defendant Giordano went on to satisfy only certain of the requirements set out in the September 2022 Memorandum.

68.     For example, by email on November 3, 2022, an employee of the Kimmel Defendants requested "confirm[ation] in writing that you have granted permission to The Philadelphia Orchestra and Kimmel Center, Inc. to access and analyze all data related to the Philly

---

[30] *See* Id. at Outline, ¶¶ 2(b)-(c).
[31] *See* Id. at ¶¶ 1(a)-(b).
[32] *See* Id. at ¶ 3(a).
[33] *See* Ex. 7 at p. 15.

POPS and Encore Series that resides in Tessitura and any other customer relationship management (CRM) system," to which Defendant Giordano responded in the affirmative.[34]

69.     However, upon information and belief, the Kimmel Defendants and Defendant Giordano knowingly failed to secure "[a]pproval of orderly wind-down plan with goal of dissolution presented to the POKC and approved by the ESI Board," and knowingly failed to "[r]eview calendar through the end of the [POPS'] current season to determine what programs remain and critical dates" or give advance notice to major benefactors of the POPS' upcoming concerts, among other steps that were required by the September 2022 Memorandum.

### D.   November 16, 2022: Defendants Tarnopolsky and Giordano announce the dissolution of the POPS without board approval and without ensuring an orderly wind-down of operations

70.     Despite failing to take the above-referenced actions to ensure an orderly wind-down, Defendants Tarnopolsky and Giordano nonetheless proceeded to publicly announce the POPS's closure in November 2022.

71.     Specifically, Defendants Tarnopolsky and Giordano executed a "step-by-step" media strategy devised by the Kimmel Defendants' public relations firm announcing the POPS' closure by way of the November 2022 Email described at paragraphs 27-29, above, as well as an embargoed article published the same day in *The Philadelphia Inquirer* (the "November 2022 Article", and together with the November 2022 Email, the "November 2022 Shutdown Announcements").[35]

72.     In the November 2022 Article, which Plaintiff also reviewed, Defendant Giordano blamed the decision on a drop in attendance and mounting debt, explaining that the POPS had

---

[34] A true and correct copy of Defendants' November 3, 2022 correspondence is attached hereto as Ex. "11."
[35] *See* Morell, *Who Killed the Philly POPS?*, Ex. 7 at pp. 1-2.

"amassed a debt of $450,000 to the Kimmel, its major landlord, and about $500,000 to other vendors" by November 2022.[36]

73.     When asked by a reporter why the POPS chose not to file for bankruptcy, which would have enabled the POPS performing and could have "kept the group alive," Defendant Giordano reportedly stated in the November 2022 Article that the directors of the POPS "didn't think [bankruptcy] was the best alternative.  It's been a struggle, and the board felt the best way was to take this alliance" with POKC.[37]

74.     Nonetheless, Defendant Giordano repeated his assurance from the November 2022 Email that the POPS' "main concern is to address our audience and artist obligations," and further promised that staff would be kept through the end of the season.[38]

75.     Defendant Tarnopolsky was also interviewed in the November 2022 Article, where he tersely acknowledged that his "hope and plan" was for the Kimmel Defendants to "present pops programming in the future."[39]

76.     Contrary to the assertions of POPS' board support in the November 2022 Shutdown Announcements, there reportedly was "never any vote taken to shut down the POPS," and the decision to cease operations was made and directed by Defendants Tarnopolsky and Giordano.[40]

77.     Indeed, Defendant Giordano reportedly has admitted through his attorneys that the decision to shut down the POPS was a **"collaborative idea"** between himself and Defendant Tarnopolsky.[41]

---

[36] *See* Peter Dobrin, *The Philly Pops is Shutting Down, Leaders Say*, The Philadelphia Inquirer, Nov. 16, 2022, available at: https://www.inquirer.com/news/philly-pops-shutting-down-20221116.html (last accessed May 7, 2024), a true and correct copy of which is attached hereto as Ex. "12".
[37] *See* Id.
[38] *See* Id.
[39] *See* Id.
[40] *See* Morell, *Who Killed the Philly POPS?*, Ex. 7 at pp. 3, 15.
[41] *See* Id. at p. 12 (emphasis added).

78.     Furthermore, multiple members of the POPS' leadership have publicly disclaimed responsibility for the shutdown.

79.     For example, POPS' board member Sal DeBunda reportedly stated, "I would never approve shutting down. Frank did."[42]

80.     Similarly, POPS' board member Meryl Levitz is reported to have said that the board "expected a proposal" from the Kimmel Defendants concerning a potential merger "[b]ut we didn't ever see that."[43]

81.     Likewise, Ms. Corbin reportedly explained that the POPS-Orchestra merger "was never brought to a vote, in my mind, because I'm not certain it ever had the board's support."[44]

**E. *2023: POPS concerts are indefinitely "postponed" after the Kimmel Defendants abandon merger plans and evict the POPS from Verizon Hall***

82.     The POPS experienced immediate and severe repercussions following the November 2022 Shutdown Announcements.

83.     First, the POPS' relationship with its musicians "broke down completely," as multiple members walked off stage mid-performance following receipt of the November 2022 Email, while others publicly "lambasted management" at POPS concerts into December and then voted to authorize a strike against the group.[45]

84.     Second, the POPS came under serious financial strain as over $1 million in pledged revenue was rescinded "just as the POPS was about to incur giant expenses from its Christmas series."[46]

---

[42] *See* Id. at p. 15.
[43] *See* Id.
[44] *See* Id.
[45] *See* Id. at pp. 1, 10-11.
[46] *See* Id. at pp. 15, 17.

85.     Upon information and belief, the Kimmel Defendants abandoned the planned merger with the POPS sometime in December 2022.

86.     Defendant Tarnopolsky reportedly explained to an acquaintance at the time that the merger was not consummated because the "POPS finances were worse than the Kimmel had expected."[47]

87.     On January 17, 2023, the Kimmel Defendants made a written demand on the POPS for immediate payment of $523,643.25 for costs related to the POPS' Christmas shows, and an additional payment of $82,815 for estimated costs related to upcoming shows.[48]

88.     Just a few days later, on or around January 20, 2023, the Kimmel Defendants asserted that the POPS' debt amounted to $1 million and evicted the group from Verizon Hall.

89.     During a meeting that same day, Defendant Tarnopolsky reportedly refused to accept further payments and stated to POPS representatives that, "You do not have the right to speak," prompting a POPS' board member to conclude, "[m]oney wasn't [the Kimmel Defendants'] issue.  They just wanted [the POPS] to disappear."[49]

90.     Notwithstanding a "Save the POPS" fundraising campaign announced in early 2023, the following scheduled 2022-23 concert season performances by the POPS (collectively, the "Cancelled Concerts") were never performed due to the POPS' eviction from Verizon Hall and continuing fallout from the November 2022 Shutdown Announcements:

- February 17, 2023: *Get Up, Stand Up: The Encyclopedia of Soul*;

- February 18, 2023: *Get Up, Stand Up: The Encyclopedia of Soul*;

---

[47] *See* Id. at p. 16.
[48] A true and correct copy of the Kimmel Defendants' January 17, 2023 demand letter is attached hereto as Ex. "13". *See also* Peter Dobrin, *Kimmel Center to Philly Pops: Pay $500K or get out*, The Philadelphia Inquirer, Nov. 16, 2022, available at:  https://www.inquirer.com/news/philadelphia-orchestra-philly-pops-eviction-letter-20230119.html  (last accessed Aug. 2, 2024).
[49] *See* Morell, *Who Killed the Philly POPS?*, Ex. 7 at p. 15.

- February 19, 2023: *Get Up, Stand Up: The Encyclopedia of Soul*;

- March 24, 2023: *POPS Rocks Paul Simon, James Taylor & Billy Joel*;

- March 25, 2023: *POPS Rocks Paul Simon, James Taylor & Billy Joel*;

- March 26, 2023: *POPS Rocks Paul Simon, James Taylor & Billy Joel*;

- April 21, 2023: *A Sondheim Celebration*;

- April 22, 2023: *A Sondheim Celebration*;

- April 23, 2023: *A Sondheim Celebration*;

- May 19, 2023: *POPS Rocks Hollywood: Bohemian Rhapsody, Rock of Ages & Tommy*;

- May 20, 2023: *POPS Rocks Hollywood: Bohemian Rhapsody, Rock of Ages & Tommy*; and

- May 21, 2023: *POPS Rocks Hollywood: Bohemian Rhapsody, Rock of Ages & Tommy*.

91.     Consequently, tickets to the Cancelled Concerts were rendered worthless, and Plaintiff Callahan along with thousands of other audience members lost at least $1.1 million as a direct and proximate result of Defendants' wrongful acts alleged herein.

92.     Although there was no merger between the POPS and the Orchestra, as of the date of the instant filing the POPS remains out of operation without declaring bankruptcy and without any assumption of liability by the Kimmel Defendants.

93.     Meanwhile, in or around the summer of 2023, the Kimmel Defendants executed an agreement for multiple performances to be played at Verizon Hall by a new orchestra made up of former POPS musicians who are reportedly negotiating for the right to use the 'Philly POPS' name.[50]

---

[50] *See* Peter Dobrin, *With the Future of Philly Pops in Limbo, No Name Pops Moves Ahead with Concerts*, The Philadelphia Inquirer, July 6, 2023, available at: https://www.inquirer.com/arts/free-philadelphia-concert-tickets-

**F.  *The POPS files the Antitrust Action against the Kimmel Defendants***

94.     As referenced above, the POPS filed an action against the Kimmel Defendants in this Court around April 2023 styled *Encore Series Inc. d/b/a THE PHILLY POPS v. The Philadelphia Orchestra and Kimmel Center, Inc., et al.,* U.S.D.C. E.D. PA No. 2:23-cv-01421-MRP (the "Antitrust Action") to recover for losses associated with the Cancelled Concerts, among other things.

95.     In their operative complaint, the POPS assert claims for violations of the Clayton and Sherman Antitrust Acts, tortious interference, and unfair competition, based on allegations that the Kimmel Defendants "attempted through a contracted public relations firm to force false internal and external messaging on the Philly POPS management designed to paint the narrative that the Philly POPS would go out of business with its programming being taken over by the Philadelphia Orchestra" among other things.[51]

96.     Upon information and belief, the Kimmel Defendants not only attempted but *succeeded* in forcing the POPS out of business by promulgating the November 2022 Shutdown Announcements with the help of Defendant Giordano.

97.     At a hearing held in connection with the Antitrust Action, a POPS director testified that the POPS used the funds it received for tickets to the Cancelled Concerts to pay for "other things," including, upon information and belief, costs, expenses, and donor shortfalls caused by

---

kimmel-center-pops-20230706.html (last accessed September 26, 2024); *see also* Ex. 7 at p. 17; *and* Peter Dobrin, *Everything Old is New Again? No Name Pops Aims to Acquire 'Philly Pops' Name*, The Philadelphia Inquirer, April 20, 2023, available at https://www.inquirer.com/arts/peter-nero-philly-pops-kimmel-center-20240420.html (last accessed September 26, 2024).
[51] *See* POPS' First Amended Complaint at Dkt. 5, Para. 55, *Encore Series Inc. d/b/a THE PHILLY POPS v. The Philadelphia Orchestra and Kimmel Center, Inc., et al.,* No. 2:23-cv-01421-MRP (E.D. Pa. May 17, 2023), a true and correct copy of which is attached as Ex. "14."

the November 2022 Shutdown Announcements and the POPS' eviction by the Kimmel Defendants. [52]

98.     On the other hand, the Kimmel Defendants have responded to the Antitrust Action with counterclaims seeking in excess of $1 million from the POPS, including a claim for breach of contract on behalf of Ticket Philadelphia in the amount of $423,325.58 for "total debts for box office services that were provided under the terms of the Ticketing Services Agreement" between Defendants.[53]

99.     Upon information and belief, the damages sought by way of the Kimmel Defendants' counterclaims in the Antitrust Action include fees associated with tickets to the Cancelled Concerts purchased by Plaintiff and the Class members.

100.     In truth, Defendants' combined actions directly and proximately caused the tickets to the Cancelled Concerts to be rendered worthless, and thereby caused Plaintiff and other similarly situated audience members to suffer damages.   By their actions, Defendants have committed breach of contract, conversion, fraud, aiding and abetting, conspiracy, concert of action, and have violated the Pennsylvania CPL, and other similar statutes nationwide.

## CLASS ACTION ALLEGATIONS

101.     Plaintiff brings this case as a class action under FED. R. CIV. P. 23, on behalf of herself and as a representative of the following Class:

## Nationwide Class:

> All persons who purchased or paid for tickets to one or more of the Cancelled Concerts.

---

[52] *See* Morell, *Who Killed the Philly POPS?*, Ex. 7 at p. 7.
[53] *See* Kimmel Defendants' Answer to First Amended Complaint at Dkt. 18, Paras. 171, 206-13, *Encore Series Inc. d/b/a THE PHILLY POPS v. The Philadelphia Orchestra and Kimmel Center, Inc., et al.*, No. 2:23-cv-01421-MRP (E.D. Pa. June 20, 2023), a true and correct copy of which is attached as Ex. "15."

**Pennsylvania Sub-Class:**

> All persons in Pennsylvania who purchased or paid for tickets to one
> or more of the Cancelled Concerts.

102.    Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family. Plaintiff reserves the right to modify or amend Class definitions, as appropriate, during the course of this litigation.

103.    Plaintiff's Class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

104.    <u>Numerosity</u>: The proposed class is so numerous and geographically dispersed that individual joinder of all their members is impracticable.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  At a minimum, there are thousands of Class members.

105.    <u>Commonality and Predominance</u>: This action involves questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

> a.    Whether Defendants engaged in the conduct alleged, including actions in furtherance of an agreement to terminate the operations of the Philly POPS for the benefit of the Philadelphia Orchestra;
>
> b.    Whether Defendants' representations and/or omissions were fraudulent;
>
> c.    Whether any of Defendants aided or abetted the fraudulent conduct of another;

    d.   Whether Defendants' conduct violates Pennsylvania's Unfair Trade Practice and Consumer Protection Law and/or other applicable state or territorial consumer protection statutes;

    e.   Whether there was a contract between Class members and Defendants;

    f.   Whether the indefinite postponement of the Cancelled Concerts without refund constitutes a breach of contract;

    g.   Whether Defendants converted Class members' funds;

    h.   Whether Class members have been injured by Defendants' conduct;

    i.   Whether the Class is entitled to damages, restitution, and/or other relief as a remedy for Defendants' misconduct; and

    j.   The extent of Class-wide injury and the measure of damages for those injuries.

106.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

107.    <u>Typicality</u>: Plaintiff's claims are typical of those of the Class in that Plaintiff, like other Class members, purchased or paid for tickets to the Cancelled Concerts. Regardless of the amount of tickets that were purchased, or for which of the Cancelled Concerts the tickets were purchased, Plaintiff and Class members were all harmed because they bought said tickets and have not been refunded by Defendants. Plaintiff and Class members suffered economic injury – namely, the loss of ticket payments, as a direct and proximate result of Defendants' conduct. Furthermore, Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims.

108.    <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and her interests do not conflict with the interests of

those she seeks to represent.  The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel, who have extensive experience in prosecuting complex lawsuits and class action litigation.

109.   <u>Superiority of Class Action and Impracticability of Individual Actions</u>: Plaintiff and the members of the Class suffered harm as a result of Defendants' unlawful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual joinder of all members of the Class is impracticable.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members. Finally, the presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

**FIRST CAUSE OF ACTION**

**PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
LAW
73 Pa. C.S.A. §§ 201-1, *et seq.*
(Plaintiff and the Nationwide Class, or alternatively, the Pennsylvania Sub-Class v. All
Defendants)**

110.   Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

111.    Plaintiff purchased her tickets to the Cancelled Concerts primarily for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2.

112.    All of the acts complained of herein were perpetrated by Defendants in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

113.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL"), 73 Pa. C.S.A. §§ 201-1, *et seq.*,  prohibits unfair or deceptive acts or practices, including, "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services," as well as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).  Defendants engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated Pennsylvania CPL.

114.    Defendants participated in unfair or deceptive trade practices that violated the Pennsylvania CPL as described below and alleged throughout the Complaint.  For example, Defendants, acting by and through their duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations and omissions of fact in the November 2022 Shutdown Announcements concerning, among other things, support for the POPS' dissolution among Defendants' respective boards, and Defendants' intent to "continue to carry out slated programming for the 2022–23 season," when Defendants knew that these representations and omissions were false, fraudulent and misleading. Defendants therefore have violated the Pennsylvania CPL and other similar state statutes nationwide.

115.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of

24

any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the tickets to the Cancelled Concerts.

116.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

117.    Plaintiff and other Class members justifiably relied upon the material misrepresentations made by Defendants concerning, among other things, support for the POPS' dissolution among Defendants' respective boards and Defendants' intent to "continue to carry out slated programming for the 2022–23 season," and, because of such reliance, suffered those damages and losses set forth above.

118.    Defendants owed Plaintiff and other Class members a duty to disclose the truth about the lack of support for the POPS' dissolution among Defendants' respective boards, and the risk that the POPS would not perform its entire 2022-23 season, because Defendants: (a) possessed exclusive, specific and superior knowledge of the true risks that the Cancelled Concerts would not be performed; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations regarding the above, while purposefully withholding material facts from Plaintiff that contradicted these representations.

119.    Plaintiff and other Class members suffered injury in fact to a legally protected interest. As a result of Defendants' conduct, Plaintiff and other Class members was harmed and suffered actual damages.

120.    Plaintiff and other Class members have suffered ascertainable losses of money, in the form of costs for tickets to the Cancelled Concerts that have not been refunded, as a result of

various unfair and/or deceptive acts or practices by Defendants, including but not limited to the following:

a.        Representing that the tickets to the Cancelled Concerts had provisions, characteristics, uses or other benefits or, lack thereof, that, in fact, they did not have;

b.        Advertising, marketing, and selling tickets to the Cancelled Concerts with the intent not to perform or allow the performance of the Cancelled Concerts;

c.        Failing to comply with the terms of guarantees and/or warranties given to Plaintiff prior to, at the time of, and after, Plaintiff's payment for tickets to the Cancelled Concerts; and,

d.        Engaging in the aforementioned fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding.

121.    Defendants are liable to Plaintiff for treble her actual damages or $100, whichever is greater, and attorneys' fees and costs under 73 P.S. § 201-9.2(a), and other similar state statutes nationwide.  Plaintiff is also entitled to an award of punitive damages given that Defendants' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

<u>**SECOND CAUSE OF ACTION**</u>

**BREACH OF CONTRACT**
**(Plaintiff and the Nationwide Class v. The POPS and Ticket Philadelphia)**

122.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

123.    Tickets to the Cancelled Concerts were sold to Plaintiff and other putative Class members by Defendants the POPS and Ticket Philadelphia.

124.    Accordingly, Plaintiff entered into an agreement with the POPS and Ticket Philadelphia whereby Plaintiff was sold tickets for seats to concerts scheduled to be performed by the POPS at Verizon Hall on February 18 and May 20, 2023.  These tickets comprise valid and enforceable contracts entitling Plaintiff to watch the aforementioned Cancelled Concerts.

125.    Plaintiff and the Class members performed their obligations under the agreement by purchasing ticket(s) and rendering payment.

126.    Defendants breached their obligations under their agreements with Plaintiff and other Class members by indefinitely postponing the Cancelled Concerts due to factors under their control, and again by refusing to provide refunds to Plaintiff and Class members on demand.

127.    Defendants' breaches were knowing and willful and not the result of mistake or inadvertence.

128.    Plaintiff and Class members reasonably expected a timely refund when the concerts to which they purchased tickets were cancelled.

129.    Defendants' failure to provide timely refunds caused Plaintiff and Class members damages in the forms of unreturned funds and the lost time value of money.

130.    As a result of Defendants' breach, Plaintiff and the Class members have been deprived of the benefits of their contracts and damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

**FRAUD**
**(Plaintiff and the Nationwide Class v. Kimmel Defendants and Defendant Giordano)**

131.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

132.    To the extent this count is inconsistent with any of the others, it is pled in the alternative.

133.    "A claim for fraud requires the plaintiff to prove the following: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Marion v. Byrn Mawr Trust Co.*, 288 A.3d 76, 86 (Pa. 2023) (citation omitted).

134.    In the November 2022 Shutdown Announcements, the Kimmel Defendants and Defendant Giordano made multiple false representations concerning, among other things, support for the POPS' dissolution among Defendants' respective boards, and Defendants' intent to "continue to carry out slated programming for the 2022–23 season."

135.    These representations were material to the transaction at hand insofar as the November 2022 Shutdown Announcements provided assurances to Plaintiff and other Class members that upcoming POPS concerts would be performed as scheduled.

136.    These representations were made by the Kimmel Defendants and Defendant Giordano for the purpose of inducing Plaintiff to purchase tickets to the Cancelled Concerts, and with the knowledge that Defendants could not fulfill their obligations to Plaintiff and/or reckless indifference to same.

137.    Plaintiff justifiably relied on the aforementioned representations and purchased tickets to two of the Cancelled Concerts, which amounts have not been refunded to Plaintiff despite multiple requests.

138.    As a direct and proximate result of the Kimmel Defendants' and Defendant Giordano's false representations, Plaintiff has suffered damages in the forms of unreturned funds paid for the tickets to the Cancelled Concerts and the lost time value of money.

139.    The aforementioned conduct of Defendants was done with bad motive and constitutes willful, malicious, reckless and oppressive conduct, entitling Plaintiff to punitive damages.

### FOURTH CAUSE OF ACTION

### AIDING AND ABETTING
**(Plaintiff and the Nationwide Class v. Kimmel Defendants and Defendant Giordano)**

140.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

141.    To the extent this count is inconsistent with any of the others, it is pled in the alternative.

142.    Pennsylvania law recognizes the independent tort of aiding and abetting fraud. *See generally*, *Marion v. Byrn Mawr Trust Co*., 288 A.3d 76 (Pa. 2023).

143.    As discussed above, the November 2022 Shutdown Announcements included fraudulent misrepresentations concerning, among other things, support for the POPS' dissolution among Defendants' respective boards, and Defendants' intent to "continue to carry out slated programming for the 2022–23 season."

144.    The Kimmel Defendants and Defendant Giordano aided and abetted each other in the commission of such fraud.

145.    Section 876 of the Restatement (Second) of Torts (section 876), adopted in Pennsylvania, provides in pertinent part: For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he …(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself…". *Marion*, 288 A.3d at 79.

29

146.    Plaintiff has suffered losses that include the unreturned funds paid for the tickets to the Cancelled Concerts and the lost time value of her money.

147.    As alleged, such harm was caused by the fraudulent misrepresentations contained in the November 2022 Shutdown Announcements.

148.    The Kimmel Defendants and Defendant Giordano knew that such conduct constituted a breach of duty to honor their own public statements and fulfill the requirements set out in the September 2022 Memorandum, which contemplated that Defendants would, among other things, secure approval of the wind-down from their respective boards, and allow for the POPS' 2022-23 concert season to be performed as scheduled.

149.    The Kimmel Defendants and Defendant Giordano all independently, in combination with one another, and collectively gave substantial assistance or encouragement to one another to so conduct themselves.

150.    Accordingly, Defendants are each liable to Plaintiff for aiding and abetting the fraudulent conduct alleged herein.

## FIFTH CAUSE OF ACTION

### CONVERSION
### (Plaintiff and the Nationwide Class v. The POPS Defendants)

151.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

152.    To the extent this count is inconsistent with any of the others, it is pled in the alternative.

153.    From the moment of cancellation or constructive cancellation, Plaintiff and the Class owned and had a right to immediately possess the funds in the amount that they paid for tickets to the Cancelled Concerts, including all fees collected.

154.     Notwithstanding Plaintiff and Class members' right to immediate possession of the funds following cancellation or constructive cancellation of the Cancelled Concerts, the POPS continued to exercise control, dominion, or ownership over Plaintiff's and Class members' funds, including all fees collected.

155.     The POPS intentionally and substantially interfered with property belonging to Plaintiff and the Class by taking possession of it, refusing to refund it, preventing Plaintiff and the Class from having access to it, and/or refusing to return it after a demand was made for its return.

156.     Plaintiff and the Class did not consent to the POPS' conduct in withholding their funds.

157.     The POPS' exercise of dominion and control over Plaintiff's and Class members' property was knowing and wrongful.

158.     Plaintiff and the Class were harmed by the POPS' conduct.

159.     As a result of the POPS' conduct, Plaintiff and other Class members have suffered damages, including the loss of their unreturned funds and the lost use of their money, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### CONSPIRACY
**(Plaintiff and the Nationwide Class v. Kimmel Defendants and Defendant Giordano)**

160.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein

161.     To the extent this count is inconsistent with any of the others, it is pled in the alternative.

162.    "In order to state a cause of action for civil conspiracy, a plaintiff must show 'that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Marion*, 288 A.3d at 89.

163.    Here, the Kimmel Defendants and Defendant Giordano all combined and agreed with each other to do an unlawful act and/or a lawful act by unlawful means.

164.    As alleged herein, Defendant Tarnopolsky and Defendant Giordano agreed orally and in writing to participate in the scheme to shut down the POPS for the benefit of the Orchestra. In other words, their roles and involvement were the subject of an agreement.

165.    Defendants' scheme was unlawful and/or utilized unlawful means insofar as Defendants entered into an agreement to defraud and deceive Plaintiff and violate the Pennsylvania CPL by releasing the November 2022 Shutdown Announcements without securing approval of the wind-down from their respective boards, and without ensuring that the POPS' 2022-23 concert season would be performed as scheduled.

166.    In the absence of Defendants' agreement, Plaintiff would not have suffered the loss of the funds paid for the tickets to the Cancelled Concerts or the lost time value of her money.

167.    The Kimmel Defendants and Defendant Giordano knowingly provided substantial assistance and encouragement to each other and aided and abetted each other for the purpose of deriving substantial benefits for Defendants by causing the POPS to cease operations.

168.    The Kimmel Defendants and Defendant Giordano performed the acts set forth herein intending to injure members of the public, including Plaintiff, by interfering with the POPS' performances so that the Orchestra could perform in their stead.

169.    The Kimmel Defendants and Defendant Giordano performed the acts alleged herein in furtherance of their agreement with intent and/or with knowledge of the injury and damage it

would cause to POPS audience members like Plaintiff, and with knowledge and intent to cause such injuries and/or with reckless disregard for the consequences.

170.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have been damaged, and Defendants are liable for such and damages.

## SEVENTH CAUSE OF ACTION

### CONCERT OF ACTION
**(Plaintiff and the Nationwide Class v. Kimmel Defendants and Defendant Giordano)**

171.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

172.    To the extent this count is inconsistent with any of the others, it is pled in the alternative.

173.    Section 876 of the Restatement (Second) of Torts (section 876) also provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him." *Marion*, 288 A.3d at 79.

174.    Here, Plaintiff has suffered the loss of the funds she paid for the tickets to the Cancelled Concerts and the lost time value of her money.

175.    The Kimmel Defendants and Defendant Giordano should be held liable for their respective roles, in concert with each other, pursuant to a common design to put the POPS out of business for the benefit of the Orchestra.

176.    The tortious acts of the Kimmel Defendants and Defendant Giordano include fraud, aiding and abetting, and violations of the Pennsylvania CPL.

177.    The common design in which the Kimmel Defendants and Defendant Giordano joined involved all parties acting in concert to fraudulent induce the cessation of the POPS'

33

operations by way of releasing the November 2022 Shutdown Announcements without securing approval of the wind-down from the POPS' board or ensuring that the POPS' 2022-23 concert season would be performed as scheduled.

178.    As a result, the Kimmel Defendants and Defendant Giordano are liable to Plaintiff by reason of having acted in concert with each other to harm Plaintiff.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of herself and the Class, requests the Court to:

a. Certify the case as a class action pursuant to F.R.C.P. Rule 23, designate Plaintiff as representatives for the Class, and appoint counsel of record as Class Counsel;

b. Order Defendants to provide actual damages, interest, and equitable relief (including restitution) to Plaintiff and the Class members, and/or order Defendants to disgorge profits realized as a result of their unlawful conduct;

c. Order Defendants to pay punitive damages, as allowable by law, to Plaintiff and the Class members;

d. Order Defendants to pay statutory damages, as allowable by the statute(s) asserted herein, to Plaintiff and the Class members;

e. Order Defendants to pay punitive, treble and/or multiple damages, as allowable by the statute(s) asserted herein, to Plaintiff and the Class members;

f. For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

g. For costs of the proceedings herein;

h. For reasonable attorneys' fees as allowed by statute or other authority;

i.  For administrative costs and expenses incurred in the class certification process;

and

j.  Such additional relief as the Court may deem necessary and proper.

### **JURY TRIAL DEMANDED**

Plaintiffs herein demand a trial by jury of all issues triable.

Respectfully submitted,

**ASTOR WEISS KAPLAN & MANDEL, LLP**

Dated:  October 16, 2024

_____

By: Jonathan Zakheim
David L. Woloshin
Jordan Schlossberg
130 North 18th Street
Suite 1500
Philadelphia, PA 19103
Phone: (215) 790-0100 | Fax: (215) 790-0509
*E-Mail*: DWoloshin@astorweiss.com
JSchlossberg@astorweiss.com
JZakheim@astorweiss.com

*Attorneys for Plaintiff and the Class*